LANSING COMPANY, INC.

v.

UNITED STATES.

C.D. 4675;  Court No. 75-4-00876.

United States Customs Court.

Nov. 30, 1976.

Weinstein, Myer, New & Berlin, Chicago, Ill. (Arthur E. Berlin, Chicago, Ill., of counsel), for plaintiff.

Rex E. Lee, Asst. Atty. Gen., Washington, D.C. (Jerry P. Wiskin, New York City, trial atty.), for defendant.

LANDIS, Judge:

In this civil action brought to recover drawback of duties, plaintiff complains that at all the customs administrative levels [1] pursued it has been denied a refund of such

duties under section 313(c) of the Tariff Act of 1930, as amended. The drawback involved 90 cartons of so-called "invisible or concealed zippers" exported from the United States and returned to the manufacturer in West Germany.

Section 313 of the Tariff Act of 1930, as amended (19 U.S.C. § 1313), provides in pertinent part as follows:

(c) Upon the exportation of merchandise not conforming to sample or specifications or shipped without the consent of the consignee upon which the duties have been paid and which have been entered or withdrawn for consumption and, within ninety days after release from customs custody, unless the Secretary authorizes in writing a longer time, returned to customs custody for exportation, the full amount of the duties paid upon such merchandise shall be refunded as drawback, less 1 per centum of such duties.

\* \* \* \* \* \*

(j) Allowance of the privileges provided for in this section shall be subject to compliance with such rules and regulations as the Secretary of the Treasury shall prescribe, which may include, but need not be limited to, the fixing of a time limit within which drawback entries or entries for refund under any of the provisions of this section or section 1309(b) of this title shall be filed and completed, and the designation of the person to whom any refund or payment of drawback shall be made.

The customs regulations of Treasury (19 C.F.R.) administering the statute provide, in pertinent part, as follows:

[Section] *22.32  Drawback  entry.*—\* \*.

(b) Each drawback entry covering merchandise not conforming to sample or specifications or shipped without the consent of the consignee shall be executed in the name of the importer of record, unless another person has been named in the import entry as the actual owner and

---

[1]. Plaintiff filed a drawback entry and, when it was denied, filed a protest under section 514 of the Tariff Act of 1930, as amended (19 U.S.C. § 1514), which was also denied.

the declaration of such owner has been timely filed, in which case the drawback entry may be filed in the name of either such owner or the importer of record. If the goods are claimed to be not in accordance with sample or specifications, the drawback entry shall be accompanied by a copy of the order for the merchandise, copies of any preliminary correspondence, and the samples or specifications on which the merchandise was ordered, together with a certificate of the actual owner that the sample or specifications submitted are those on which the merchandise was ordered, showing in detail in what manner the merchandise does not conform to sample or specifications. If no written order was placed and no sample or specifications are available, a certificate of the actual owner setting forth the specifications of his order and the method by which they were communicated to the seller may be accepted. If the merchandise was shipped to the importer without his consent, a clear statement of that fact shall be submitted, together with all information in the possession of the importer as to the reason for the shipment. In doubtful cases the collector may decline to allow the claim unless there is produced corroboration by the shipper of the specifications or circumstances, or other evidence sufficient in the opinion of the collector to establish the claim.

There is no dispute concerning the facts. The parties do, however, differ about what the real issue in this case is in terms of the facts. Plaintiff contends that the customs decision denying drawback raises only one issue, whether the exported zippers conform or do not conform to sample or specifications. According to plaintiff, the zippers did not conform to specifications and industry standards. Defendant in its answer to the complaint denies that the zippers did not conform to specifications and industry standards but argues in its brief that the question in this case is whether plaintiff complied with the customs regulations on drawback. Defendant postures that plaintiff did not comply because plaintiff has stipulated that at no time prior to the commencement of this action did plaintiff submit to the customs service "a certificate setting forth the specifications of its order for the * * * [zippers] and the method by which said specifications were communicated to the seller * * *." (Exhibit I.)

■ Compliance with the regulations on drawback is, as defendant points out, mandatory. *Nestle's Food Co. (Inc.) v. United States*, 16 Ct.Cust.App. 451, T.D. 43199 (1929); *GAF Corporation v. United States*, 72 Cust.Ct. 153, C.D. 4526 (1974). As the record in this case illustrates, however, compliance with the regulations can give rise to controversy when merchandise is purchased by written order on oral representations that "bugs" inherent in samples would be worked out prior to delivery.

■ On trial, plaintiff adduced the testimony of two witnesses, which is not rebutted.[2] Relevantly summarized, the testimony establishes that the imported zippers were purchased after discussions with the manufacturer in 1968. The manufacturer did show plaintiff samples of the zippers. Plaintiff was not, however, satisfied with the samples because the coils did not interlock uniformly and the slider was too taut and tight (R.16). It is plaintiff's testimony that in discussing the problems inherent in the samples, the manufacturer orally promised and represented that, if plaintiff placed an order for the zippers, the manufacturer would deliver to plaintiff zippers without the problems inherent in the samples (R.17). Following those discussions, there was an exchange of correspondence and written orders were placed with the manufacturer.[3]

---

**2.** Defendant apparently discovered nothing that is contrary to the record. See, Customs Court Rules, Chapter 6.

**3.** Exhibit 1 is representative of zippers delivered by the manufacturer, unpackaged. Exhibit 2 is representative of the zippers delivered by the manufacturer and packaged for sale by plaintiff. Exhibit 3 is an illustrative zipper marketed in the United States under the name "Unique".

■ Defendant has taken the position that plaintiff's drawback application is flawed because plaintiff did not submit, to customs officials, the written purchase orders and preliminary correspondence alluded to in the testimony, or produce any specifications or samples upon which the zippers were ordered. I would suppose that the whole point of the customs regulations on drawback, as they bear on orders, correspondence, samples and specifications, is to give customs officials some criteria for decision as to whether the drawback merchandise conforms or does not conform to the orders, correspondence, sample or specifications. One difficulty is that the customs regulations are not that explicit.[4] It is understandable, therefore, that with its drawback entry plaintiff doubtless submitted the best probative evidence it had that the drawback zippers did not work properly. That evidence consisted of customer complaints and returns for credit, and its own district court complaint against the manufacturer, which suit was settled *inter alia* on terms according to which the manufacturer had to pay plaintiff $8,000. To my mind, when purchasing merchandise, there is no stronger specification, be it written or unwritten, than that which says that delivered merchandise will function for the purpose it is designed and intended. Defendant's answer to the complaint in this case does not purport to raise the issue of compliance with the customs regulations.[5] Argument that is not related to the issues raised by the pleadings is irrelevant. Accordingly, I am inclined to the view that customs officials were satisfied that plaintiff procedurally complied with the regulations.

■ On the merits, customs officials denied plaintiff's claimed drawback. *Prima facie* evidence of drawback, submitted to customs officials may or may not be sufficient evidence of the facts to support a judgment upon trial of the issue. *United States v. C. J. Holt & Co., Inc.*, 17 CCPA 385, T.D. 43822 (1930). Customs officials apparently took a cautious view of the documented record on drawback and, being somewhat in doubt, denied the plaintiff drawback. On trial of the drawback issue, plaintiff testimonially and corroboratively established that its bargain with the manufacturer specified that the delivered zippers would have coils that interlocked uniformly and sliders that were not taut or tight. The customer complaints, plaintiff's settlement of its district court complaint against the manufacturer (exhibits B and C introduced by defendant) and the testimony preponderantly support the fact that the drawback zippers were inherently defective because they did not meet those specifications. In substantially similar factual situations this court has sustained drawback. In *American Pistachio Corp. v. United States*, 23 Cust.Ct. 103, C.D. 1198 (1949), the importer, as required by the regulations, was unable to get the shipper to corroborate that the drawback merchandise did not conform to the specifications of the importer's order. Customs officials denied the importer's claim for drawback. This court (in an opinion approvingly quoting *United States v. Conkey & Co.*, 6 Ct.Cust.Appls. 487, T.D.

---

On trial decision was reserved and the parties directed to brief defendant's objection to the admission of plaintiff's exhibits 4 and 5 in evidence (R.61). Exhibits 4 and 5 are letters bearing 1969 dates, written on the letterhead of the manufacturer to plaintiff. Exhibit 4 is unsigned and for that reason inadmissible. Exhibit 5 expresses the manufacturer's appreciation of the problems inherent in the delivered zippers. Exhibit 5 came from plaintiff's regular kept file of correspondence with the manufacturer (R.62) and is, therefore, admissible and received in evidence.

4. The customs regulations do provide that: "If no written order was placed and no sample or specifications are available, a certificate of the actual owner setting forth the specifications of his order and the method by which they were communicated to the seller may be accepted." The tentative tone of the regulations might give one pause to believe that strong evidence that the merchandise was inherently defective would satisfy the law and regulation.

5. The purpose of pleadings is to narrow the issue. *Berkey Technical Corp. v. United States*, 380 F.Supp. 786, 71 Cust.Ct. 275, C.R.D. 73–27 (1973).

36122 (1916)) held that oral testimony of a state of facts conforming to the requirements of the statute could be made on trial, and sustained the claim for drawback. In *Weinberg et ux. v. United States*, 26 Cust.Ct. 336, Abstract 55136 (1951), plaintiffs, husband and wife, during a visit in Canada purchased a mink cape in a store which represented that the cape was of the best quality available both as to materials and workmanship. Subsequent inspection by a competent fur appraiser in the United States established that the cape did not meet those specifications and the cape was exported and returned to the seller. Customs officials denied the claim for drawback. This court held that plaintiffs were entitled to the relief the drawback statute was designed to offer and sustained the claim for drawback. In *Mattia Locatelli v. United States*, 63 Treas.Dec. 829, T.D. 46390 (1933), cheese was imported into the United States and duties paid thereon. Upon examination, after delivery from customs custody, the cheese was found to be moulded and, therefore, unsalable. It was exported and returned on an application for drawback. Customs officials denied the claim for drawback for the reason that "the merchandise in question conformed to the specifications of the buyer when it left the es-

tablishment of the foreign shipper, and damage during the voyage is not a matter of drawback under section 313." On trial a witness testified that customers refused the cheese because it was no good and made the importer take it back. The witness examined the merchandise taken back and saw that it was not of the usual quality delivered because it had a thick mould, and the usual quality was clean and had no mould on it. Another witness testified that the standard and specifications for the imported cheese was in all cases that it should conform to the requirements of the market and the standard of the market was that the cheese present an absolutely clean surface. There was similar testimony by a third witness. Based on the testimony the court sustained the claim for drawback.

For the reasons discussed and following the decisions cited, plaintiff's claim for drawback is sustained.

Judgment will so enter.