Billy J. WILLIAMS, Plaintiff,

v.

INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE, WORKERS, etc., et al., Defendants.

No. 75–1509–Civ–CA.

United States District Court, S. D. Florida.

Feb. 15, 1978.

Roger D. Haagenson, Ft. Lauderdale, Fla., for plaintiff.

William W. Nelson, Washington, D. C., and Steel, Hector &. Davis, Miami, Fla., for defendant, National Airlines.

Plato E. Papps, Washington, D. C., Manners & Amoon, Miami, Fla., for defendant union.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ATKINS, Chief Judge.

THIS MATTER is before the Court upon the defendants' Rule 41(b) motion for invol-untary dismissal upon the close of all the evidence, including testimony and exhibits, received in plaintiff's case in chief. The Court is of the opinion that all the evidence bearing on the relevant issues of law have been submitted in the plaintiff's case in chief, and thus no further evidence need be adduced.

### APPLICABLE LAW

■ 1. In holding that parties to a labor dispute may lawfully agree to deprive a party of "any rights under the Railway Labor Act or any other laws for recovery of job rights," the Fifth Circuit Court of Appeals, 496 F.2d 919, has held that:

Title 45, U.S.C. Secs. 151, 152 and 154 to 163, known as the Railway Labor Act, is extended to carriers by air by Secs. 181 et seq. of Title 45, U.S.C. The act requires the representative of the parties involved to attempt to settle disputes or grievances, whether deemed "major" or "minor", Sec. 152 First. *Elgin, Joliet & Eastern Railway Co. v. Burey*, 1945, 325. U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886, on rehearing, 1946, 327 U.S. 661, 665, 66 S.Ct. 721, 723, 90 L.Ed. 928, 930. Sec. 152 Second directs that all disputes between a carrier and its employees "shall be considered, and, if possible, decided, with all expedition, in conference between representatives designated and authorized so to confer."

Under these mandates the parties then are required to try to settle a dispute before invoking the procedures for handling either (1) "major disputes", within the jurisdiction of the National Mediation Board, Sec. 183, Title 45 U.S.C., or (2) "minor disputes", sec. 184, Title 45 U.S.C.

■ 2. "[I]t is also well settled that failure to protest a settlement within a reasonable time, where allegedly the settlement was entered by the attorney without authority, works a ratification of the settlement since it is a client's duty, having actual or constructive knowledge of the settlement and its terms, to express his disapproval within a reasonable time. . . . The failure by these persons to challenge

the settlement has resulted, as noted above, in the payout of nearly $300,000. prior to any challenge of any type being made. Under these circumstances, I hold that by their silence, with knowledge, whether it be characterized as actual or constructive, they ratified. See *Hot Springs Coal Co. v. Miller*, 107 F.2d 677 (10 Cir. 1939); *Powell v. Penna. Railroad Co.*, 166 F.Supp. 448 (E.D.Pa. 1958), rev'd on other grounds 267 F.2d 241 (3 Cir. 1959); *Beirne v. Fitch Sanitarium, Inc.*, 167 F.Supp. 652, at 654 (S.D.N.Y.1958); *Yarnall v. Yorkshire Worsted Mills*, [370 Pa. 93, 87 A.2d 192,] supra; cf. *Kincade v. Jeffery-De Witt Insulator Corp.*, 242 F.2d 328 (5 Cir. 1957)." *Mungin v. Florida East Coast Railway Company*, 318 F.Supp. 720, 736, aff'd, 441 F.2d 728 (5th Cir., 1970).

3. Where union members seek to set aside court-approved class action settlement against employer-railway for alleged violations for the Railway Labor Act and abrogation of collective bargaining agreements, and where said members accepted benefits in the form of payments made pursuant to this settlement, the members must make an offer to restore the *status quo ante* as condition to the relief sought. *Id.* at 725.

■ 4. "Compromise agreements predicated on fraud or mistake are regarded as voidable. Such agreements may be attacked by bringing an action to rescind the contract, or by seeking the vacation of a judgment or decree that has been entered pursuant thereto. In either case, however, the injured party must, on discovery of the true facts, promptly announce his purpose to rescind. Furthermore, he must adhere to this decision and be guilty of no undue delay or vacillation in moving speedily to have his rights formally asserted. He cannot remain silent and continue to treat the benefits of a contract as his own. By his conduct, he may lose the right to rescind and thereby become conclusively bound by the agreement. It is, moreover, a general rule that a settlement agreement cannot be rescinded, even for fraud or misrepresentation, where it is not possible for the parties to return to their original positions, or be restored to their original rights, a fraudu-

lently induced contract not being illegal per se." 6 *Fla.Jur., Compromise and Settlement* § 11.

■ 5. "No rule is more settled than that equity aids only the vigilant. Equity discourages delay in the enforcement of rights, as nothing but good conscience, good faith, and diligence justify its action. It will not restore opportunities or renew possibilities that have been lost by neglect, ignorance, or even want of means. Rather, equity will remain passive, granting no aid to a complainant, even though he might have been entitled to such relief had he acted with reasonable diligence.

■ "Courts of equity view with disfavor suits brought long after the transaction involved has occurred, and after death prevents those familiar with the facts from testifying. They may deny relief even though the complainant's conduct is not pleaded as a defense. They will afford relief, however, where the complainant's inaction is occasioned by the defendant's fraud, but a very clear showing must be made where the party charged with fraud is dead.

■ "The maxim that equity aids the vigilant is applied in many situations. Thus, rescission, cancellation, or specific performance of a contract will be denied, unless the complainant acts promptly. A judgment or decree cannot be attacked where there is a lack of due diligence. Nor will equity allow a party to wait until another has improved property so that it becomes valuable before asserting an equitable claim." 12 *Fla.Jur.*, Equity § 66.

6. In an analogous situation to the instant case involving judicial review of the System Board of Adjustment, the Fifth Circuit asserted that:

Appellants' contention at this late date that they never have known the nature of the charges is specious. The System Board found that they had actual notice of the charges against them at least from the date of the hearing before the hearing officer, if not before, and the district court correctly held that the decision of

the System Board on whether appellants were properly discharged or not is final and binding on the courts and not subject to review on the merits by the courts. It was also correctly decided there that the courts can reverse the System Board only where there is a denial of due process before the Board and that such a review does not extend to proceedings before submission to the Board. These actions of the district court are firmly established in earlier cases before this court and by cases decided by the Supreme Court. In *Gunther v. San Diego and Arizona Eastern Ry.*, 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965), with respect to the reviewability of awards made under the Railway Labor Act, 45 U.S.C.A. § 151 et seq., said the following:

> This Court time and again has emphasized and re-emphasized that Congress intended minor grievances of railroad workers to be decided finally by the Railway Adjustment Board.
>
> \* \* \* \* \* \*
>
> The basic grievance here—that is, the complaint that petitioner has been wrongfully removed from active service as an engineer because of health— has been finally, completely, and irrevocably settled by the Adjustment Board's decision. Consequently, the merits of the wrongful removal issue as decided by the Adjustment Board must be accepted by the District Court, 382 U.S. at 263–264, 86 S.Ct. at 372.

This court has consistently followed Gunther in holding that district courts have no authority to review the System Board's awards. See *Southern Pacific Company v. Wilson*, 378 F.2d 533 (5 Cir. 1967); *Hodges v. Atlantic C.L.R. Co.*, 363 F.2d 534 (5 Cir. 1966); and *Rittle v. REA Express*, 367 F.2d 578 (5 Cir. 1966). There are, however, very limited situations in which following the actions of a system board, authorized by the Railway Labor Act (supra), court review is available. These can arise only where there has been a denial of due process by some act of the Board in making an award.

*Southern Pacific Company v. Wilson*, supra, and *Edwards v. St. Louis-San Francisco Railroad Company*, 361 F.2d 946 (7 Cir. 1966).

*Rosen v. Eastern Air Lines, Inc.*, 400 F.2d 462, 463–64 (5th Cir. 1968).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Upon reviewing all the relevant evidence received in this cause, including the testimony and exhibits, the Court hereby enters the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. The plaintiff, defendant International Association of Machinists and Aerospace Workers (IAM), and defendant National Airlines (NAL) entered into an "Agreement and Release" on December 10, 1973.

2. Said "Agreement and Release" provided that plaintiff was to be rehired by NAL.

3. In consideration therefor, said "Agreement and Release" provided that, *inter alia*, plaintiff resolves and settles all claims against defendants NAL or IAM arising out of the 1970 furlough and failure of recall in 1971.

4. Said "Agreement and Release" also provided that:

"3. Williams' seniority a mechanic will reflect that he is a new employee in accordance with Article 13(a) of the current NAL–IAM Agreement, unless modified by a neutral arbiter's Decision and Award as hereinafter provided for.

"4. Within sixty (60) days of the date of this Agreement, the parties will present the issue of Williams' seniority to a neutral arbiter agreed to by all three parties to this Agreement, or appointed by the National Mediation Board should the parties be unable to agree upon an arbiter. The issue to be presented to the arbiter will be whether Williams should have seniority to a new employee, or whether Williams' seniority date shall be June 23, 1969, the date that he was first employed by NAL. It is agreed

by all parties to this Agreement that, in that final and binding arbitration:

"a) The arbiter shall have jurisdictional authority to make the necessary decision.

"b) The arbiter's decision shall be final and binding upon the Company, the Union, and Williams.

"c) The Company shall be entitled to make any and all arguments in support of its position that Williams should have seniority as a new employee, except that such arguments may not be used for the purpose of persuading the arbiter that he does not have the jurisdictional authority to render the necessary decision.

"d) Williams and the Union shall be entitled to make any and all arguments in support of his position that his seniority date as a mechanic should be June 23, 1969.

"5. Williams hereby states that he chooses that the IAM represent him in this arbitration matter, as he has full confidence in the ability and interest of the Union to fairly and properly represent him.

"6. That if the arbiter should decide in favor of Williams' position, Williams clearly waives all rights to back pay and any other direct or indirect monetary emoluments to which he may be entitled (including active service benefits for the period November 2, until December 10, 1973) except for active service benefits that Williams accrued between June 23, 1969, and November 2, 1970, the same to be restored to him and applied prospectively only from the date of the arbiter's decision."

5. Plaintiff voluntarily entered into said "Agreement and Release," knowing the legal effect of all terms therein, including his waiving the aforementioned rights of action against defendants. Hence, there was no fraud in the inducement or other equitable grounds for setting aside said agreement.

6. All terms of said agreement were dutifully performed by both defendants.

7. "On February 4, 1974, an arbitration hearing was held in Miami with the three parties to the December 10, 1973 'Agreement and Release' present." Complaint, p. 5.

8. At said arbitration hearing, plaintiff was given notice of matters to be resolved there, and a full and complete opportunity to be heard. Plaintiff's counsel pursued plaintiff's position in a manner consistent with fundamental fairness.

Hence, plaintiff was afforded due process at said arbitration hearing.

9. Plaintiff did not complain of the legality of the December 10, 1973 "Agreement and Release" until after an adverse ruling on the question of his seniority status was made by the arbiter. Further, this action was not filed until July 30, 1975. These facts indicate bad faith, or lack of vigilence, and "unclean hands" on plaintiff's part such as to warrant denying the equitable relief of rescinding said agreement.

10. Plaintiff has received all the benefits conferred upon an employee of defendant NAL as a result of said "Agreement and Release." Hence, plaintiff has ratified said "Agreement and Release."

11. The benefits conferred on plaintiff as a result of said "Agreement and Release" are such as to preclude restoring the parties to the *status quo ante.* Hence, said "Agreement and Release" cannot, in equity and good conscience, be set aside.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction under 28 U.S.C. §§ 1331(a) and 1337, 29 U.S.C. §§ 411, 412, and 45 U.S.C. § 151, *et seq.*

2. In equity, there is no basis for rescision of the December 10, 1973 "Agreement and Release," as set forth in Finding No. 5, *supra.*

The December 10, 1973 "Agreement and Release" and all the terms therein as discussed in the foregoing Findings of Fact are valid and binding as a matter of law. *Kline v. Florida Airlines, Inc.,* 496 F.2d 919 (1974).

3. Even if said "Agreement and Release," and any terms therein, are not enforceable as a matter of law, plaintiff is estopped, as a matter of equity, from denying its existence in accordance with Findings Nos. 9, 10 and 11, *supra*.

4. Accordingly, plaintiff is barred from bringing all claims arising out of the "Furlough in 1970, his recall and cancellation of recall and failure of recall in 1971, and any seniority lists that may have been published at NAL, and any alleged failures of a duty to fairly represent."

5. Inasmuch as plaintiff was afforded due process at the arbitration hearing (as discussed in Findings Nos. 7 and 8, *supra*), the Court cannot disturb the arbiter's decision.

6. Accordingly, it is hereby ORDERED AND ADJUDGED that, pursuant to F.R. Civ.P. 41(b), all claims brought by plaintiff as set forth in all counts of the complaint are dismissed with prejudice.

To the extent that the above Findings of Fact constitute Conclusions of Law, they are adopted as such. To the extent that the above Conclusions of Law constitute Findings of Fact, they are adopted as such.

Judgment shall be entered by the Clerk in accordance with the aforementioned Findings of Fact and Conclusions of Law.