The UNITED STATES, Appellant,

v.

LOCKHEED PETROLEUM SERVICES, LTD., Appellee.

Appeal No. 82–35.

United States Court of Appeals, Federal Circuit.

May 11, 1983.

Jerry P. Wiskin, New York City, argued for appellant. With him on the brief were J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Washington, D.C., and Joseph I. Liebman, Atty. in Charge, New York City.

Charles P. Deem, New York City, argued for appellee.

Before MARKEY, Chief Judge, and FRIEDMAN, DAVIS, NICHOLS and BENNETT, Circuit Judges.

DAVIS, Circuit Judge.

The United States appeals from a final judgment of the Court of International Trade in which the trial judge held appellee Lockheed Petroleum Services, Ltd. (Lockheed) entitled to drawback of duties for a manifold centre that it caused to be imported into the United States. This court has jurisdiction under § 127(a) of the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25, 38 (to be codified at 28 U.S.C. § 1295(a)(5)).

I

The facts can be quickly stated. Lockheed, a Canadian corporation, manufactured the manifold centre in Canada; this device was to be incorporated in this country into the M/C BASE (a vessel documented under the laws of Canada) by Delta Shipyards of Houma, Louisiana (Delta), which was building the vessel for Lockheed's account and ownership. In 1974, Lockheed imported the manifold centre into the United States and liquidated duties were paid in full.

Before the manifold centre was actually imported into this country, appellee requested a ruling from the United States Customs Service (Customs) as to whether it would be eligible for drawback pursuant to 19 U.S.C. § 1313(a), (g) (1976),[1] subject to appellee's compliance with Customs regulations. Customs responded affirmatively, and provided Lockheed with a drawback rate.

In August 1975, Delta completed the M/C BASE for its use by Lockheed in oil exploration on the continental shelf in the Gulf of Mexico. On August 13, 1975, a Delta official mailed the abstract of manufacturing records required by 19 C.F.R. § 22.4(g) (1982)[2] to Lockheed's counsel in New York City for review and filing with Customs in New Orleans. On August 18, the M/C BASE departed from the port of New Orleans, before receipt there of the abstract and without examination by Customs, for installation on the outer continental shelf at Block 331 of the Eugene Island area, roughly 80 miles from New Orleans in the Gulf of Mexico. On the following day, the District Director of Customs in New Orleans received the abstract of manufacture from Lockheed's New York counsel.

Lockheed then filed a drawback entry with Customs. Customs denied drawback because, it said, the M/C BASE did not

---

**1.** Under this statute (which has been specifically made applicable to materials imported and used in the construction of vessels built for foreign account and ownership) importers of merchandise used in the production and manufacture of articles in this country are generally entitled to a refund as drawback, less 1% of the customs duties paid, after the articles manufactured and produced in the United States have been exported.

**2.** 19 C.F.R. § 22.4(g) (1982) provides that:
    (g) The builder of a vessel or aircraft upon which drawback is to be claimed under sec-

tion 313(g), Tariff Act of 1930, shall keep the records provided for in this section so far as applicable. An abstract of such records shall be filed with the district director at the headquarters port of the district in which the vessel or aircraft is built in ample time prior to the first departure of the vessel or aircraft from the United States to enable that officer to have the abstract verified by examination of the vessel or aircraft and the builder's records pertaining thereto.

clear for a foreign port pursuant to 19 C.F.R. § 22.13(f) (1982) and also because Lockheed failed to comply with 19 C.F.R. § 22.4(g) (1982), *supra* note 2, requiring that an abstract of manufacture be filed before a vessel's departure from the United States. In April 1977, Customs adversely liquidated the drawback entry and later denied Lockheed's protests regarding the denial of drawback.

Lockheed instituted this action, to recoup the drawback, in the United States Court of International Trade. The trial judge held that Lockheed was entitled to recover. In his view, Lockheed "relied on the representations of Customs that drawback would be allowed," but was denied drawback merely because the abstract of manufacture arrived too late—less than 24 hours after the M/C BASE left port—due to the "unforeseen occurrence" of slow mail delivery. The judge concluded that, in these circumstances, equitable relief was appropriate because Lockheed was not to blame for the late arrival of the abstract.

## II

We hold that the trial court erred when it held that the equities dictated an award of drawback duties to Lockheed. There was, in this case, neither compliance by appellee with the controlling requirements nor acceptable excuse for that failure. Drawback privileges under the Tariff Act of 1930 are expressly conditioned, by statute, upon "compliance with such rules and regulations as the Secretary of the Treasury shall prescribe...." *See* 19 U.S.C. § 1313(j) (1976); *id.* § 1313(k) (Supp. IV 1980) (recodification). Numerous decisions have held that compliance with drawback regulations is mandatory. *See, e.g., United States v. W.C. Hardesty Co.,* 36 CCPA 47, 52 (1949); *American Tobacco Co. v. United States,* 61 Ct.Cl. 980, 991–92 (1926); *Nestle's Food Co. v. United States,* 16 Ct.Cust.App. 451, 457,

T.D. 43199 (1929); *Spencer, Kellogg & Sons v. United States,* 13 Ct.Cust.App. 612, 615–16, T.D. 41459 (1926); *Lansing Co. v. United States,* 424 F.Supp. 112, 114, C.D. 4675 (Cust.Ct.1976).

Lockheed failed to comply with an applicable regulation in its attempt to claim drawback. 19 C.F.R. § 22.4(g) (1982), *supra* note 2, expressly required Lockheed to file an abstract of manufacture with the district director of Customs at the port of New Orleans before the M/C BASE departed from the United States. It is undisputed that the M/C BASE left that port on August 18 and that Customs did not receive the abstract from Lockheed's counsel until August 19. Moreover, the trial court implicitly ruled that the M/C BASE did leave the United States when it was removed to the Eugene Island area at a point some 80 miles off the Louisiana coast, and Lockheed does not contest this finding on appeal.[3] We concur in the trial judge's *sub silentio* conclusion that the M/C BASE did leave the United States; that finding is not contrary to the weight of the evidence. *See Western Stamping Corp. v. United States,* 57 CCPA 6, 8, 417 F.2d 316, 317 (1969).

Because Lockheed failed to file the abstract prior to the departure of the M/C BASE, Customs had no opportunity to verify the contents of the abstract through an examination of the vessel. As a result, Customs could not determine for itself whether Lockheed actually incorporated the manifold centre into the M/C BASE. Lockheed's current willingness to furnish a diving bell to Customs for inspection purposes at the Eugene Island site does not mitigate the failure to comply with the terms of 19 C.F.R. § 22.4(g) (1982). That regulation is mandatory, not merely directory, and compliance is a condition precedent to the right of recovery of drawback. *Cf. United States v. W.C. Hardesty Co., supra,* 36 CCPA 47, 52 (1949).[4] Proffer of an after-the-fact substi-

---

**3.** The trial judge stated that there is no "opportunity for the vessel, the M/C BASE, to *again* leave the United States for the first time." *Lockheed Petroleum Services, Ltd. v. United*

*States,* 557 F.Supp. 583 at 588 (Ct. Int'l Trade, 1982) (emphasis added).

**4.** In *Hardesty, supra,* an importer sought drawback under the Tariff Act of 1930 for imported

tute (cumbersome and bizarre in this instance) is not the equivalent of timely compliance.

## III

The court below held that for two reasons Lockheed could recover drawback duties "under equitable principles". First, it found that Lockheed was not at fault for the asserted slow mail delivery of the abstract. Second, the court reviewed the previous communications between Lockheed and Customs which culminated in a Customs ruling that the manifold centre would be eligible for drawback. It concluded that Lockheed relied on Customs' representations that drawback would be allowed, and that Customs' subsequent denial of drawback was equivalent to forfeiture.

If there can be a case in which failure to comply with drawback requirements should properly be excused or overlooked, cf. 19 U.S.C. § 1520 (Supp. IV 1980), this is not one. The trial court abused its equitable powers in awarding drawback to Lockheed. Although since 1980 the Court of International Trade has possessed equitable powers akin to those of a district court (see 28 U.S.C. § 1585 (Supp. V 1981)), it surely cannot exercise those powers in favor of a party who, like Lockheed, is at fault for failure to comply with a mandatory regulation.[5] As we noted in Part II, supra, Lockheed had no legal entitlement to drawback unless it filed the abstract prior to the departure of the M/C BASE. It could have filed the abstract in a timely fashion in any number of ways to ensure compliance with the regulation, utilizing such well-known means as a telecopier, a messenger, or an overnight courier service. If it wished to use the U.S. Postal Service, it could have resorted to express mail, special delivery, or registered mail. It chose instead to rely solely on the ordinary post. The trial judge thought the failure of the ordinary mail to deliver the abstract in time was the fault of the Postal Service, but we consider that finding to be clearly erroneous. The fault was plainly appellee's. Delta (Lockheed's agent) left only the short period of five days between its mailing to New York (August 13) and the departure of the M/C BASE from New Orleans on August 18—although the abstract had to go from Louisiana to New York and then back again to Louisiana. There is nothing in the record to show what constituted a reasonable or normal period of time for a piece of regular mail to move from Louisiana to New York and then back to New Orleans. Indeed, there is no proof to indicate when Lockheed's New York counsel actually mailed the abstract to Customs in New Orleans. And at the very least, appellee could have inquired from Customs in New Orleans, before permitting the vessel to leave that port, whether the abstract had been received. Lockheed has offered no explanation as to why it allowed the M/C BASE to leave before the abstract arrived in New Orleans, thus foreclosing the opportunity for Customs to examine the vessel before it departed.

In these circumstances, we cannot say that Lockheed was blameless for the late arrival of the abstract. Cf. United States v. W.C. Hardesty Co., supra, 36 CCPA 47, 49–52 (1949). Lockheed had several means at its disposal which it could have employed to guarantee compliance with the regulation, yet it neglected to use any of them. Equitable powers, even if available, should not be invoked to excuse the performance of a condition by a party that has not acted with reasonable due care and diligence.

---

articles used in the manufacture of domestically-produced items which were, in turn, exported. The importer's broker mailed a notice of intent to export for benefit of drawback to the Collector of Customs at the port as prescribed by applicable regulations, but it arrived too late for the customs officials to inspect the merchandise before it was laden for export. Hardesty, supra, 36 CCPA at 49. The court found drawback to be properly denied because the notice of intent was not filed in a timely fashion, and because no inspection occurred; the court did not attribute fault to the post office for the late delivery of the notice, but rather to the importer and its broker. Id. at 52.

5. We do not purport to pass upon the full extent of the court's equitable powers or whether the 1980 amendment gives the court any authority in addition to the power to grant new types of remedies (e.g., injunctive, declaratory).

**1476**

See *Grymes v. Sanders,* 93 U.S. 55, 61, 23 L.Ed. 798 (1876); *Anderson Brothers Corp. v. O'Meara,* 306 F.2d 672, 677 (5th Cir.1962); *Williams v. IAM,* 484 F.Supp. 917, 920 (S.D. Fla.1978); *aff'd,* 617 F.2d 441 (5th Cir.), *cert. denied,* 449 U.S. 840, 101 S.Ct. 118, 66 L.Ed.2d 47 (1980); *cf. Farnsworth v. Duffner,* 142 U.S. 43, 48, 12 S.Ct. 164, 165, 35 L.Ed. 931 (1891).

■ We are also not persuaded that Lockheed can properly rest on the alleged earlier representations of Customs that drawback would be granted, or that the denial of drawback worked a forfeiture against Lockheed. Even if we assume *arguendo* that (1) the Customs officials had actually asserted that there would in fact be no inspection and that (2) they had the legal authority to waive inspection of the M/C BASE prior to the filing of the abstract—both doubtful points we need not now decide—Lockheed still could not recoup the drawback duties because it failed to follow the mandate of 19 C.F.R. § 22.4(g) (requiring an abstract to be sent) through its own affirmative negligence.[6] The judgment of the United States Court of International Trade is reversed.

*Reversed.*

---

**6.** In view of our disposition of the case, we do not reach the issue of whether Lockheed should be denied drawback because the M/C BASE did not clear for a foreign port in accordance with 19 C.F.R. § 22.13(f) (1982).