**AUREA JEWELRY CREATIONS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

Court No. 85–03–00383.

United States Court of International Trade.

Sept. 7, 1989.

Barnes, Richardson & Colburn, Andrew P. Vance, New York City, and Melvin E. Lazar, Maplewood, N.J., for plaintiff.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Mark S. Sochaczewsky, New York City, for defendant.

OPINION

TSOUCALAS, Judge:

In this action, plaintiff Aurea Jewelry Creations, Inc. (Aurea) protests the decision of the United States Customs Service (Customs) denying drawback, pursuant to 19 U.S.C. § 1313(a) (1982), on 343 gold ingots plaintiff exported from the United States. At issue is whether records missing from the documentation submitted pursuant to 19 C.F.R. § 22.4(a) to establish the exported gold ingots as manufactured from the imported gold jewelry, may be testimonially established.

*Background*

A. *Laws*

Under the relevant drawback statute, 19 U.S.C. § 1313(a), Customs will fully repay, less one percent, the amount of duties paid upon goods previously imported into the United States and used there in the manufacture or production of articles which are subsequently exported. The purpose behind this system of reimbursement is to encourage the production of articles for export, "thus increasing our foreign commerce and aiding domestic industry and labor." *United States v. International Paint Co.*, 35 CCPA 87, 90, C.A.D. 376 (1948); *see also United States v. Nat'l Sugar Refining Co.*, 39 CCPA 96, 99, C.A.D. 470 (1951).

To be eligible for drawback, the claimant must demonstrate compliance with 19 C.F.R. § 22.4(a). This regulation imposes the requirement that the claimant must submit records to Customs showing the following: (1) the date or inclusive dates of manufacture or production; (2) the quantity and identity of the imported duty-paid merchandise used; (3) the quantity and description of the articles manufactured or produced; and (4) the quantity of waste

incurred, if any. These prerequisites are intended to screen out fraudulent claims and ensure that exported articles, on which drawback is claimed, were manufactured with duty-paid imported merchandise.

### B. *This Case*

During the years 1978, 1979, and 1980, Aurea purchased a certain amount of 14-karat gold chains and bracelets from Gori & Zucchi S.A., Aurea's sole supplier and parent company in Italy. Duty was paid upon importation of these articles into the United States. On August 30 and September 30 of 1980, Brink's, Inc. transported a certain amount of Aurea's gold jewelry to JMS Manufacturing Co. (JMS), a wholly-owned subsidiary of Aurea, to be melted and cast into 14-karat gold ingots. Aurea submitted to Customs a "drawback statement" in which Aurea outlined its plans to melt the imported gold chains and bracelets into 343 14-karat gold ingots and the ensuing exportation of these ingots to Italy. Defendant's Exhibit D. In this "statement," Aurea agreed to maintain manufacturing records in accordance with 19 C.F.R. § 22.4(a).

JMS manufactured the gold ingots pursuant to the plan outlined in Aurea's "drawback statement." These ingots, which were transported back to Aurea under the custody of Brink's, were subsequently exported under Customs supervision.

Customs rejected Aurea's drawback claim on the grounds that Aurea failed to maintain records consistent with 19 C.F.R. § 22.4(a) and the "drawback statement." Specifically, Customs found that the documents accompanying the drawback claim did not sufficiently authenticate Aurea's allegations that the jewelry Brink's delivered from Aurea to JMS was, in fact, the subject imported 14-karat gold chains and bracelets upon which Aurea had previously paid duty. Customs determined that Aurea deficiently documented the dates of manufacture and the manufacturing lot numbers, and therefore may not collect drawback.

Aurea concedes that its drawback claim does not include certain manufacturing records but explains that Aurea could not bring them forward because they were among the documents which were misplaced after JMS went out of business. Aurea contends that the alleged deficiencies in documentation were cured through the testimony of witnesses during trial on February 7, 1989. The questions presented, then, are whether testimonial evidence may be introduced to establish compliance with 19 C.F.R. § 22.4(a), and if so, whether sufficient testimonial evidence exists in this case, establishing a valid claim for drawback.

### *Discussion*

 Compliance with the regulations is a condition precedent to securing drawback. *United States v. Lockheed Petroleum Servs., Ltd.*, 709 F.2d 1472 (CCPA 1983); *Ciba Co. v. United States*, 27 Cust.Ct. 144, C.D. 1359 (1951). The validity of a drawback claim may be substantiated by testimonial evidence introduced at trial. *See Mantle Lamp Co. of America v. United States*, 71 Treas.Dec. 623, T.D. 48,917 (1937); *Lansing Co. v. United States*, 424 F.Supp. 112, 115, 77 Cust.Ct. 92, 96 (1976). Therefore, testimony establishing the existence of records required under 19 C.F.R. § 22.4(a) may be substituted in place of the actual documents. Under the facts of this case, the Court finds that plaintiff is entitled to drawback because plaintiff proffered sufficient documentary and testimonial evidence to satisfy the record requirements under 19 C.F.R. § 22.4(a).

Customs' suspicion that the gold jewelry Brink's transported from Aurea to JMS is not the subject imported merchandise is unfounded. It was shown that Aurea generated certain internal credit memo vault slips, informally referred to as "picking orders," authorizing the vault manager of Aurea to have the listed merchandise pulled from inventory and sent to JMS to be melted down into gold ingots. *See* Exhibit B to Aurea's Protest; Trial Transcript at 14. The testimony of Lawrence Burns, former Assistant Controller of Aurea, substantiates Aurea's contention that the gold

articles listed on the "picking orders" correspond, albeit circuitously, with the subject imported gold chains and bracelets. *See* Trial Transcript at 15–26. The items listed in the "picking orders" are identified according to Aurea's own method of designating its articles of jewelry. These Aurea style numbers can be traced back to the Gori & Zucchi style numbers and invoices, and the Customs entry numbers. *Id.;* Exhibit C to Aurea's Protest. Therefore, the gold jewelry described in the "picking orders" is most logically the subject merchandise upon which Aurea previously paid a duty.

Notwithstanding this evidence, Customs questioned whether the gold jewelry Brink's delivered to JMS were the gold items described in the "picking orders," because the only documents that Aurea furnished to establish this identity were the invoices of Brink's. *See* Exhibit G to Aurea's protest. These invoices list the total value of the gold jewelry but do not detail the identity or weight of the items of Aurea's gold jewelry under Brink's custody. *Id.* The Court, however, is persuaded that the gold jewelry Brink's transported from Aurea to JMS is none other than the subject imported merchandise.

Mr. Burns testified that Aurea's computer-produced daily inventory reports verify that the items listed in Aurea's "picking orders" were removed from the vault of Aurea. Trial Transcript at 24. Juan C. Bellu, former Controller of JMS, testified that JMS received the gold jewelry described in Brink's invoices, along with a copy of Aurea's "picking orders." Trial Transcript at 44. Mr. Bellu further testified that consistent with JMS' business procedure, the items of jewelry that Brink's delivered were weighed, and the resulting weights were recorded onto the "picking orders" for verification. *Id.* at 45. Aurea could not produce these "marked up" credit memo slips, however, because they had been misplaced.

The documentation requirement is necessary for orderly and efficient processing of drawback claims, as well as to ensure absence of fraud in drawback claims. But,

inasmuch as the drawback laws are regulatory in nature, Customs may not establish such a strict standard of compliance as to make drawback recovery prohibitive. *See American Pistachio Corp. v. United States,* 23 Cust.Ct. 103, 107, C.D. 1198 (1949). In light of Mr. Bellu's testimony that the records in question were properly maintained, it would be prohibitive to deny drawback on the basis of their absence. *See Mantle Lamp Co. of America v. United States,* 71 Treas.Dec. at 626, T.D. 48,917.

Similarly, testimonial evidence remedies the alleged inadequacy in JMS' documentation of the manufacturing process. The casting of the 343 exported gold ingots involved three melts which took place on a daily basis for over two weeks. Trial Transcript at 111. JMS recorded one date for each of the first two melts, but did not provide any manufacturing date for the third melt. In response to Customs' concern regarding absence of documentation for the third melt, Salvatore Grasso, former Plant Manager of JMS, testified that a record date was kept in the course of manufacture like the ones maintained for the first and second melts. *Id.* at 118; *see* Exhibits E and F to Aurea's Protest. Further, according to the testimony of Mr. Bellu, the articles of jewelry involved in the third melt were those listed in "picking orders" 29061, 29066, and 29069. *Id.* at 54. Similarly, Mr. Bellu testified that the gold jewelry described in "picking orders" 29060 and 29062 represent the jewelry melted down for melt one, while "picking orders" 29063, 29064, and 29065 represent the jewelry melted down for melt two. *Id.* at 50–53.

The regulation permits submission of "the date or *inclusive* dates of manufacture or production." 19 C.F.R. § 22.4(a) (emphasis supplied). The day-to-day manufacturing documentation that Customs demands of Aurea may contribute to greater accuracy in drawback claims, but the regulation does not impose such strict requirements where the manufacturing process occurs over a course of time. Therefore, the Court determines that plaintiff's entry of one date for each melt is adequate under

the regulation, notwithstanding defendant's assertions to the contrary.

The evidence dispels Customs' underlying doubts in denying drawback, which is the possibility of commingling. Maryanne Carney, the Customs drawback liquidator who determined that drawback should not be granted in this case, testified that "[t]here was no way to prove that the imported goods were the goods that were ultimately melted, which produced these ingots. We never had assurance that merchandise was not commingled...." Trial Transcript at 147. Mr. Bellu testified as to the precautionary measures that were taken during the melting and casting process to prevent any commingling between the gold jewelry JMS received from Aurea and other jewelry. It was proven that the JMS inventory during the period in question consisted of gold chains and bracelets described in the "picking orders," as well as domestically purchased silver and gold earrings. It was further shown that the domestic jewelry was kept in a separate area of the vault. *Id.* at 69. Furthermore, plaintiff adequately proved that the area in which melting and casting took place was cordoned off to monitor access into the area. *Id.* at 120.

## CONCLUSION

For the foregoing reasons, the Court determines that Aurea has made a valid claim for drawback, pursuant to 19 U.S.C. § 1313(a), on the 343 ingots that Aurea exported from the United States. Therefore, Customs is ordered to refund to Aurea the duties it paid, less 1 percent, plus the applicable interest from the date of the filing of summons in this case. SO ORDERED.

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED: that the plaintiff is entitled to receive drawback on the exported gold ingots involved herein; and it is further

ORDERED, ADJUDGED AND DECREED: that the United States Customs Service shall refund to the plaintiff the duties it paid on the subject imported merchandise, less 1 percent, together with interest, as provided by law; and this action is hereby dismissed.