**AUREA JEWELRY CREATIONS, INC.,**
Plaintiff–Appellee,

v.

**The UNITED STATES,**
Defendant–Appellant.

90–1147.

United States Court of Appeals,
Federal Circuit.

May 6, 1991.

Andrew P. Vance, Barnes, Richardson & Colburn, New York City, argued for plaintiff-appellee. With him on the brief was Melvin E. Lazar, New York City.

Mark S. Sochaczewsky, Commercial Litigation Branch, Dept. of Justice, New York City, argued for defendant-appellant. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., David M. Cohen, Director, and Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office. Also on the brief was Karen Binder, Atty., U.S. Customs Service, New York City, of counsel.

Before NEWMAN, ARCHER and PLAGER, Circuit Judges.

PLAGER, Circuit Judge.

Aurea Jewelry Creations, Inc. (Aurea), Plaintiff–Appellee, sued in the United States Court of International Trade to challenge the United States Customs Service's (Customs') denial of drawback under 19 U.S.C. § 1313(a) (1982). Customs had denied drawback on gold ingots Aurea exported from the United States, which ingots were allegedly made from gold chains Aurea had previously imported. The Court of International Trade reversed Customs' decision and ordered that the drawback, plus interest, be remitted to Aurea. *Aurea Jewelry Creations, Inc. v. United States*, 720 F.Supp. 189 (Ct.Int'l Trade 1989). We affirm.

## I. BACKGROUND

### A. The Law

The drawback statute provides in part that "[u]pon the exportation of articles manufactured or produced in the United States with the use of imported merchandise, the full amount of the duties paid upon the merchandise so used shall be refunded as drawback, less 1 per centum of such duties...." 19 U.S.C. § 1313(a). Such drawback provisions, which have existed in one form or another for the past 200 years, have been consistently aimed at encouraging domestic manufacture for exportation in order to increase foreign commerce and aid domestic industry and labor. This is accomplished by making importation for such manufacture essentially duty-free. *See United States v. National Sugar Ref. Co.*, 39 C.C.P.A. 96, 99, C.A.D. 470 (1951); *United States v. International Paint Co.*, 35 C.C.P.A. 87, 90, C.A.D. 376 (1948). *See also Tide Water Oil Co. v. United States*, 171 U.S. 210, 216, 18 S.Ct. 837, 839, 43 L.Ed. 139 (1898).

A drawback claimant must comply with the requirements of various regulations adopted by the U.S. Customs Service, Department of the Treasury, including 19 C.F.R. § 22 (1982) (reorganized and slightly modified in 1983 as 19 C.F.R. § 191). 19 C.F.R. § 22.4 addresses identification of imported merchandise for allowance of drawback, as well as establishment and expiration of drawback rates. Certain parts of § 22.4 are particularly relevant here:

"(a) Each manufacturer or producer shall keep records which will establish, as to all articles manufactured or produced for exportation with benefit of drawback, the date or inclusive dates of manufacture or production, the quantity and identity of the imported duty-paid merchandise or of articles manufactured or produced under drawback regulations (referred to hereafter in this part as drawback products) used, the quantity and description of the articles manufactured or produced, and the quantity of waste incurred.... An abstract of the records kept by the manufacturer or producer shall be filed with the drawback entry.

"(b) The imported duty-paid merchandise or drawback products shall be stored in a manner which will enable the manufacturer or producer to determine, in conjunction with his storage records, the import entry, certificate of delivery, or certificate of manufacture and delivery number or numbers under which they were received, and to identify ... the imported duty-paid merchandise or drawback products used in the manufacture or production of the articles....

"(c) The articles manufactured or produced shall be stored or marked in a manner which will preserve the identification established by means of the storage records and the records of manufacture or production.

. . . .

"(e) Where it appears to the satisfaction of Headquarters, U.S. Customs Service, or of the district director in appropriate cases, that it is impracticable for the manufacturer or producer to keep records of all the information required . . ., complementary records covering the information not available to the manufacturer or producer may be kept . . ., and abstracts of such records shall be filed with the drawback entry.

. . . .

"(h) Each manufacturer or producer shall submit to the regional commissioner . . . a statement in duplicate describing the methods which he will follow and the records which he will keep for the purpose of establishing that the articles upon which drawback will be claimed have been manufactured or produced in the United States with the use of imported duty-paid merchandise . . ., and that the records . . . prescribed in this section have been maintained. . . . The statement shall contain an agreement to follow the methods and keep the records described. . . ."

In noting that eligibility for drawback follows demonstration of compliance with these regulations, the Court of International Trade pointed out that the regulations "are intended to screen out fraudulent claims and ensure that exported articles, on which drawback is claimed, were manufactured with duty-paid imported merchandise." *See Aurea*, 720 F.Supp. at 189–90.

## B. This Case

The Court of International Trade described the facts of the case in detail. In summary they are: In 1978, 1979 and 1980, Aurea imported from Italy 14–karat gold chains and bracelets from Gori & Zucci S.A., Aurea's sole supplier and parent company. Aurea paid the required importation duty on the gold items. Pursuant to 19 C.F.R. § 22.4, Aurea later signed and submitted a "drawback statement" outlining its plan to convert the imported gold into gold ingots which would then be exported back to Italy. The statement contained an agreement by Aurea to maintain the required records.

Aurea transferred portions of the gold to JMS Manufacturing Co. (JMS), a wholly-owned subsidiary of Aurea, for melting and casting into 14–karat gold ingots. The transportation to JMS was performed by Brink's, Inc. JMS manufactured the gold into ingots, and transported the ingots, via Brink's, back to Aurea. The ingots were later exported under Customs supervision.

Customs rejected Aurea's claim for drawback on the gold chains and bracelets which Aurea claimed had been converted to the ingots and exported. Customs' rejection was based on the grounds that Aurea failed to maintain records as required by 19 C.F.R. § 22.4(a) and by the submitted drawback statement. Customs found that the documents submitted with the drawback claim did not sufficiently authenticate Aurea's allegations that the jewelry delivered to JMS by Brink's was, in fact, the imported chains and bracelets for which Aurea had paid the import duty. Specifically, Customs found to be deficient the documents Aurea submitted to establish the dates of manufacture and the manufacturing lot numbers for the ingots.

Aurea sued for its drawback. At trial, Aurea contended that the missing documents were misplaced after JMS went out of business, but that any alleged deficiencies in documentary evidence were cured by testimonial evidence presented to the Court of International Trade. That Court then examined the issues of "whether testimonial evidence may be introduced to establish compliance with 19 C.F.R. § 22.4(a), and if so, whether sufficient testimonial evidence exists in this case, establishing a valid claim for drawback." *Aurea*, 720 F.Supp. at 190. After examining the issues of law and the facts, the Court of International Trade concluded that Aurea provided sufficient documentary and testimonial evidence to satisfy the requirements of 19 C.F.R. § 22.4(a), and ordered Customs to refund the duties paid less 1 percent, plus interest.

## II. DISCUSSION

The Court of International Trade began its analysis with the following paragraph:

"Compliance with the regulations is a condition precedent to securing drawback. *United States v. Lockheed Petroleum Servs., Ltd.,* 709 F.2d 1472 [Fed. Cir.1983]; *Ciba Co. v. United States,* 27 Cust.Ct. 144, C.D. 1359 (1951). The validity of a drawback claim may be substantiated by testimonial evidence introduced at trial. *See Mantle Lamp Co. of America v. United States,* 71 Treas.Dec. 623, T.D. 48,917 (1937); *Lansing Co. v. United States,* 424 F.Supp. 112, 115, 77 Cust.Ct. 92, 96 (1976). Therefore, testimony establishing the existence of records required under 19 C.F.R. § 22.4(a) may be substituted in place of the actual documents. Under the facts of this case, the Court finds that plaintiff is entitled to drawback because plaintiff proffered sufficient documentary and testimonial evidence to satisfy the record requirements under 19 C.F.R. § 22.4(a)."

*Aurea,* 720 F.Supp. at 190.

The Government contends on appeal that this is not a correct statement of the law. Since the regulations require that certain records be kept, argues the Government, failure to produce the written records must necessarily mean failure to comply with the regulations. But that is too rigid a view of the law. It does not adequately distinguish between failure to create the required records in the first instance, and failure to produce the records at a later time when they are needed. The Court of International Trade correctly made that distinction. Compliance with the drawback regulations is mandatory and a condition precedent to the right of recovery of drawback. *See, e.g., United States v. Lockheed Petroleum Servs., Ltd.,* 709 F.2d 1472 (Fed.Cir.1983). The Court of International Trade's conclusion that testimony may establish the existence of required records is not inconsistent with the mandatory nature of the requirement to maintain certain documentation.

The drawback provisions involved here are both detailed and specific in outlining the required documentation. Testimony could be used to establish that the necessary records, no longer available for reasons shown to be excusable, were in fact maintained as required. Further testimony could then be used to establish the contents of those unavailable records, and to establish that those contents would have satisfied the substance of the drawback provisions. A claimant's testimonial evidence thus could be used to satisfy a two-pronged inquiry—1) whether appropriate documentation was maintained as required; and 2) whether the contents of that documentation adequately established claimant's right to the drawback.

The Court of International Trade concluded that "plaintiff is entitled to drawback because plaintiff proffered sufficient documentary and testimonial evidence to satisfy the record requirements under 19 C.F.R. § 22.4(a)." We understand this to mean that the court found that Aurea's testimonial evidence satisfied both prongs of the test. In any event, the Government did not challenge the sufficiency of the evidence to establish the content of the records, but only the question of whether the initial existence of the records could be shown by testimonial evidence.

## III. CONCLUSION

The judgment of the Court of International Trade is affirmed.

## COSTS

Each party will bear its own costs for this appeal.

AFFIRMED.